S:\Plans\Ch11\PlumbTech.subV.plan.2ndAmend

GENOVA, MALIN & TRIER LLP
Attorneys for the Debtor
Hampton Business Center
1136 Route 9
Wappingers Falls, New York  12590
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
----------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | CHAPTER 11 |
| PLUMBING TECHNOLOGIES, LLC, | CASE NO. 23-35478 (CGM) |

                                    Debtor.
----------------------------------------------------------X

### DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

          PLUMBING TECHNOLOGIES, LLC, the above-named debtor (the "debtor") proposes the following Second Amended Plan of Reorganization (the "Plan") pursuant to the provisions of subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Code"):

### ARTICLE I
### DEFINITIONS

          Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

          1.       "Administrative Claim" shall mean a claim for any cost or expense of administration with priority under section 503(b) or 507(a)(1) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. sections 1911 through 1930.

          2.       "Allowed Claim" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the

Consummation Date or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court, or the Plan, (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of the Debtor and the amount thereof are determined by final order of a court of competent jurisdiction other than the Court, or (e) that is expressly allowed in a liquidated amount in the Plan, *provided however,* that with respect to an Administrative Claim, that nothing herein shall be deemed to require holders of Administrative Claims incurred by the Debtor in the ordinary course of business, including the actual, necessary costs and expenses of operating the business of the Debtor, to make a request for payment of such Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code.

3.      "Bankruptcy Code" shall mean Title 11, United States Code (Title I of the Bankruptcy Reform Act of 1978, Publ. 95-598, 92 Stat. 2549, as amended).

4.      "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court, as may have jurisdiction over the Chapter 11 case.

5.      "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Court, as applicable to this Chapter 11 case or proceedings therein, as the case may be.

6.      "Bar Date(s)" shall mean the date(s), if any, designated by the Court as the last dates for filing proofs of Claims against the Debtor. Said date was fixed as August 11, 2023.

7.      "Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

8.      " Claim" shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code, to wit: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

9.      "Class" shall mean a category of holders of claims as set forth in Article II of this Plan.

10.      "Confirmation Date" shall mean the date of entry of an Order by the Court confirming this Plan.

11.      "Confirmation Order" shall mean the Order of the Court confirming the Plan

pursuant to Section 1129 of the Bankruptcy Code.

12. "Creditor" means any holder of a Claim.

13. "Debtor" shall mean PLUMBING TECHNOLOGIES, LLC, as debtor-in-possession, prior to the Confirmation Date.

14. "Disputed Claim" shall mean (a) any claim or portion of a claim (other than an Allowed Claim), which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (b) a claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined in whole or in part, by a Final Order.

15. "Distribution" means the property, including payments, required by the Plan to be provided to holders of Allowed Claims.

16. "Effective Date" means the fifteenth (15th) day following the Confirmation Date.

17. "Impaired" shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

18. " Insiders" shall have the meaning provided by Section 101(31) of the Bankruptcy Code.

19. "Lien" shall have the meaning provided by Section 101(37) of the Bankruptcy Code.

20. "Petition Date" means June 12, 2023, the date on which the Debtor filed its petition for relief commencing the Chapter 11 case.

21. "Plan" means this Second Amended Plan of Reorganization dated January 24, 2024 and any exhibits thereto and any documents delivered in connection therewith, as the same may, from time to time, be amended by any duly authorized amendment or modification to the extent permitted therein or by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

22. "Priority Claim" shall mean a Claim which qualifies as such under Section 507(a)(3),(4) and (6) of the Bankruptcy Code.

23. "Priority Tax Claim" shall mean a Claim which qualifies as such under Section 507(a)(8) of the Bankruptcy Code.

24. "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by the Debtor as such schedules or statements

may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

25.    "Secured Claim" shall mean (a) a Claim that is secured by a lien on property in which the Estate has an interest, in which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

26.    "Unimpaired" shall mean not impaired within the meaning of section 1124 of the Bankruptcy Code.

27.    "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or an Interest.

28.    "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2, Southern District of New York.

## ARTICLE II
## BACKGROUND OF THE DEBTOR

PLUMBING TECHNOLOGIES, LLC ("PlumbTech") was founded in 2014 and specializes in the design, distribution and manufacturing of toilet seats.  PlumbTech offers a comprehensive toilet seats program for both professional end users and everyday consumers.  The product line is a complete line of high quality toilet seats that include residential molded and solid wood, residential plastic, light commercial and heavy duty commercial plastic. Beginning in the fall of 2019 and continuing with the onset of Covid-19, the debtor faced a number of issues which greatly impacted its cash flow.  In or about 2017, the debtor entered into a factoring agreement with SLR Business Credit which provided financing and eased the cash flow burden slightly.  However, the debtor remained unable to service its capital investment loans and various vendor obligations. This  subchapter V case under Chapter 11 of the Bankruptcy Code was filed to provide PlumbTech with an opportunity to satisfy its secured obligation with SLR Business Credit[1] and stabilize its cash flow for the future.

---

[1]On July 31, 2023, this Court "So Ordered" the Stipulation between the debtor and SLR Business Credit which provided, inter alia, that the Factoring Agreement was deemed terminated and the obligation due and owing to SLR Business Credit by the debtor was satisfied in full. (See this Court's docket.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND INTERESTS

All claims and interests against the debtor shall be divided into the following classes:

**CLASS 1 – Administrative Professional Claims**

All Allowed Claims consisting of the actual and necessary costs and expenses of administration entitled to priority in accordance with 11 U.S.C. §507(a)(1), including, but not necessarily limited to, debtor's counsel and special counsel fees and fees of the Subchapter V Trustee, once approved by order of the Court pursuant to 11 U.S.C. §330.

**CLASS 2 –** Class 2 consists of the Administrative Expense Claim, entitled to priority pursuant to 11 U.S.C. §503(b)(9), of Euler Hermes, agent for Echo Global Logistics.

**CLASS 3** – Class 3 consists of the Priority Unsecured Claim of B&R LLC.

**CLASS 4 –** Class 4 consists of the Secured Claim of Edward Sims ("Sims").

**CLASS 5 –** The Allowed Unsecured Claims of non-insider unsecured claimants of the debtor not entitled to priority pursuant to 11 U.S.C. §507, to the extent not included in another class of claims, including without limitation any claims arising as a result of the operation of 11 U.S.C. §506.

**CLASS 6 –** The Allowed Unsecured Claim of pre-petition judgment creditor The Ashpole Revocable Living Trust.

**CLASS 7 –** The interests of the Preferred Stock Equity Security Interest holders of the debtor.

**CLASS 8 –** The interests of the Common Stock (Class A/Class B) Equity Security Interest holders of the debtor.

### ARTICLE IV
### A. TREATMENT OF CLAIMS AND INTERESTS – NOT IMPAIRED (NON-VOTING)

**CLASS 1** – Class 1 claims shall be paid in full or in accordance with an agreement between the debtor and the claimant. At the present time, it is estimated that administrative expenses will consist of the following: (1) approximately **$47,000.00** in attorneys' fees, expenses and disbursements to the firm of GENOVA, MALIN & TRIER LLP, attorneys for the debtor, less the pre-petition retainer fee and costs paid by the debtor in the sum of $31,738.00; (2) the sum of **$8,152.50** in attorneys' fees, expenses and disbursements to the firm of AMUNDSEN DAVIS,

special counsel for the debtor[2]; and (3) approximately **$5,000.00** in fees owed to the Sub-Chapter V Trustee, Heidi Sorvino.  Total unpaid administrative debt is estimated at $20,000.00.

**CLASS 2** – Class 2 consists of the administrative expense portion of the claim of Euler Hermes, agent for Echo Global Logistics (Claim No. 20), pursuant to 11 U.S.C. §503(b)(9), for goods received by the debtor within 20 days of the Petition Date.  The administrative expense portion of this claim totals SIX THOUSAND ONE HUNDRED EIGHTEEN DOLLARS AND NINETY-NINE CENTS ($6,118.99).  The debtor proposes to pay the administrative expense claim in full, in 60 equal monthly installments of ONE HUNDRED ONE DOLLARS AND NINETY-EIGHT CENTS ($101.98).  The remainder of Euler Hermes' claim, in the amount of NINE HUNDRED NINETY-FIVE DOLLARS AND THIRTY-TWO CENTS ($995.32) is provided for under Class 5 of the debtor's Plan herein[3].

**CLASS 3** – Class 3 consists of the unsecured priority claim of B&R LLC ("B&R").  The debtor proposes to pay the priority unsecured claim as follows:

(I) B&R filed a Proof of Claim (Claim No. 2) on July 13, 2023 in the total amount of TWENTY-ONE THOUSAND TWO HUNDRED NINETY-ONE DOLLARS AND THIRTY-SIX CENTS ($21,291.36), consisting of commissions due and owing by the debtor to B&R as of the Petition Date.  The unsecured priority portion of B&R's claim, pursuant to 11 U.S.C. §507(a)(4), is FIFTEEN THOUSAND ONE HUNDRED AND FIFTY DOLLARS ($15,150.00).  The debtor shall pay to B&R monthly payments, beginning on the Effective Date of the Plan, and continuing for sixty (60) months, in the amount of TWO HUNDRED FIFTY-TWO DOLLARS AND FIFTY CENTS ($252.50).  The remainder of B&R's claim, in the amount of SIX THOUSAND ONE HUNDRED FORTY-ONE DOLLARS AND THIRTY-SIX CENTS ($6,141.36) shall be reclassified as a general unsecured claim and is provided for under Class 5 of the debtor's Plan herein.

## B. TREATMENT OF CLAIMS AND INTERESTS – IMPAIRED (VOTING)

**CLASS 4** – Class 4 consists of the Secured Claim of Edward Sims ("Sims"), evidenced by the notes, dated February 10, 2017, February 22, 2019, July 30, 2019, and September 12, 2019, referencing the General Business Security Agreement dated February 10, 2017, and a subsequent UCC-1 Financing Statement filed October 7, 2022, as secured by substantially all the debtor's assets.  The balance due to Sims, as of the Petition Date, and according to Proof of Claim No. 17 filed on August 7, 2023, is ONE HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED SEVENTY DOLLARS AND FIFTY-SEVEN CENTS ($171,970.57).  Sims

---

[2]On November 22, 2023, this Court entered an Order Granting the Application for Allowance of Final Compensation and Reimbursement of Expenses forthe firm of Amundsen Davis, LLC in the total amount of $8,152.50.  This sum has been paid by the debtor.  (See ECF Doc. No. 81.)

[3]On November 8, 2023, this Court entered the Stipulation and Order Amending Claim No. 20 filed by Euler Hermes, agent for Echo Global Logistics.  (See ECF Doc. No. 67.)

is the Chief Executive Officer of the debtor and member of the Board of Managing Members of the debtor.  Further, Sims holds 1,450 shares of Class A stock voting/non-economic (58% of the Class) and 700 shares of Class B non-voting/economic stock (28% of the Class) of the debtor.  As such, Sims is an insider of the debtor.  The Sims claim shall be provided for as follows:

(I)   As an Equity Security Holder, Sims shall subordinate his Secured Claim status to the non-insider Claimants herein and shall not receive payments on his Secured Claim through the Chapter 11 Plan[4].

(II) As set forth below in Article VIII of the Plan, in exchange for the subordination and waiver of his Secured Claim, pursuant to 11 U.S.C. §1123(a)(5)(J), Sims shall receive 325 shares of Class A stock (13%) and 575 shares of Class B stock (23%) in the reorganized debtor.

**CLASS 5** – Class 5 consists of all Allowed Unsecured Claims against the debtor not entitled to priority treatment.  The Class 5 Claims shall be paid pro rata from the debtor's projected disposable income, on a quarterly basis, over a period of 5 years without interest.  The claims in Class 5 total the sum of approximately $960,642.00.  The debtor anticipates a distribution to Class 5 claimants of 25%, or a total of $240,160.50.  This results in quarterly payments to Class 5 claimants of $12,008.00.

**CLASS 6** – Class 6 consists of the Allowed Unsecured Claim of pre-petition judgment creditor, The Ashpole Revocable Trust.  The Class 6 Claim shall be paid pro rata from the debtor's projected disposable income, on a quarterly basis, over a period of 5 years without interest.  The Class 6 Claim totals $323,653.49.  The debtor anticipates a distribution to the Class 6 claimant of 30.90%, or a total of $100,008.92.  This results in quarterly payments to the Class 6  claimant of $5,000.45.

**CLASS 7** – Class 7 consists of the Series I Preferred Stock Equity Security Holders of the debtor.  The members of Class 7 are Apex International Limited ("Apex"), ElegantHome International Co., Ltd. ("ElegantHome"), Shuixiang Lian ("Lian"), Ningbo Bofan Sanitary Ware Co., Ltd. ("Ningbo"), Oyamei Sanitary Co., Limited ("Oyamei"), Wu Qiu Ping ("Qiu Ping") and Yibo Jiang ("Jiang").  Pursuant to Subscription Agreements executed by the members of Class 7, the original principal investments were converted to equity in 2019.  However, interest on said loans continued to accrue and remained outstanding as of Petition Date.  As of the Petition Date, the following amounts were due and owing to the members of Class 7:

(I) Apex - $162,917.38;

(II) ElegantHome - $58,009.51;

(III) Lian – $80,453.58;

---

[4]In the event the debtor's Plan is not fully consummated or this case converts to a case under Chapter 7, the debtor acknowledges that Sims' right to enforce the secured claim may be valid.

(IV) Ningbo – $232,670.98;

(V) Oyamei – $59,296.36; and

(VI) Qiu Ping – $28,361.33.

The Class 7 claims shall be provided for as follows:

(I)   Class 7 members shall retain their Class A and Class B stock interests in the reorganized debtor in equal amounts as they held said interests prior to the Petition Date[5].  As Equity Security Holders and in accordance with 11 U.S.C. §510, Class 7 members shall not receive distribution or payments on their claim obligations set forth herein through the Chapter 11 Plan. The Series I Preferred Stock interest in the reorganized debtor shall be eliminated.

(II) As set forth below in Article VIII of the Plan, the debtor proposes that, in exchange for the subordination and waiver of the claims set forth in Class 7, Class 7 claimants shall receive (retain) their shareholder interests in the reorganized debtor, pursuant to 11 U.S.C. §1123(a)(5)(J).

**CLASS 8** – Class 8 consists of the Class A and B Common Stock Equity Security Holders of the debtor.  The members of Class 8 are The Ashpole Revocable Living Trust ("Ashpole"), Roberta L. Moeller ("Moeller"), Mark & Kimber Block ("Block"), and Steven Q. Wruck ("Wruck").  Pursuant to Loan and Investment Agreements executed by the members of Class 8, the members of Class 8 invested funds with the debtor and interest continued to accrue on said obligations.  As of the Petition Date, the following amounts were due and owing to the members of Class 8:

(I) Ashpole - $323,653.49[6];

(II) Moeller - $101,212.00;

(III) Block – $235,111.00; and

(IV) Wruck – $239,784.00.

The Class 8 claims shall be provided for as follows:

---

[5] Any distribution to be made to Class 7 members on their Class A and Class B interests shall commence following the debtor's exit and completion of its Chapter 11 Plan payments.  Said distributions shall be made to the extent and in the manner provided for in the debtor's governing documents.

[6] Prior to the filing of the Chapter 11 petition, entered February 10, 2023, Ashpole obtained a judgment against the debtor.  Due to the entry of the judgment and the decision and order rendered by Circuit Court Judge Michael Maxwell (in the Waukesha County, Wisconsin Circuit Court), Ashpole's claim is provided for in Class 6 of the debtor's plan herein.

(I)   Pursuant to 11 U.S.C. §1123(a)(5)(J), Class 8 members, including Ashpole, will not receive stock interests in the reorganized debtor.  As Equity Security Holders and in accordance with 11 U.S.C. §510, the debtor proposes that Class 8 members shall subordinate and waive their claims to the non-insider Claimants herein and will not receive payments on the claims through the Chapter 11 Plan.

### C.  OTHER PROVISIONS APPLICABLE TO CLASS 3, 5 & 6 CLAIMS

Prepayment – The debtor may prepay all or any portion of the Claims set forth in Classes 3, 5 and 6 without penalty, at any time and from time-to-time, consistent with any provisions applicable to prepayment in any applicable loan documents and/or applicable nonbankruptcy law.

### ARTICLE V

### EXECUTION OF PLAN & PROJECTION OF FUTURE OPERATIONS

The debtor's Chapter 11 Plan will be implemented by revenues generated and received in the ordinary course and operation of the debtor's business. In addition, the debtor has initiated the process of reducing and downsizing its operations from two distribution centers to one.  The debtor is in the process of relocating inventory from Texas to Georgia and will seek to shutter the Texas distribution center, which will substantially reduce the debtor's overhead costs.  The debtor also plans on an orderly liquidation of some of its obsolete inventory to aid cash flow in the implementation of the Plan.

The debtor's projected revenues and expenses for the 5 year post-confirmation period are annexed hereto as Exhibit "A".

### ARTICLE VI

### LIQUIDATION ANALYSIS

A liquidation analysis as of December 31, 2023 is annexed hereto as Exhibit "B".

### ARTICLE VII

### LEASES / EXECUTORY CONTRACTS

The debtor is current with its monthly lease obligation with Volunteer Logistics Inc. on the warehousing and distribution center located in Loganville, Georgia.  The debtor proposes to continue its rights and responsibilities associated with the month-to-month obligation therewith.

### ARTICLE VIII

### PROPERTY NOT TO BE RETAINED

The debtor does not seek to retain its personal property (miscellaneous tradeshow supplies, display cases and shelving) (the "Property") currently stored at a warehouse located at

7120 West Post Road, Las Vegas, Nevada, as the Property is not necessary for the debtor's effective reorganization.  Upon information and belief, PYRAMID-LOGISTICS SERVICES, INC. ("PYRAMID") owns and operates the warehouse that the Property is stored in.  On September 13, 2023, PYRAMID filed a secured claim in the amount of $1,987.02 (See this Court's docket, Claim No. 21).  PYRAMID asserts that its claim is secured by way of a 'warehouseman's lien'.  Pursuant to the proof of claim filed with this Court, PYRAMID asserts an approximate fair market value of the Property of $50,000.00.

The debtor hereby surrenders the Property to PYRAMID in full satisfaction of PYRAMID's claim.  PYRAMID's claim shall not receive payment or any inclusion in the debtor's Plan hereunder in accordance with 11 U.S.C. §§1123 and 1129[7].

## ARTICLE IX

## POST-CONFIRMATION MANAGEMENT AND STOCK ISSUANCE

**A.  Post-Confirmation Ownership** - The Plan contemplates that the stock of the debtor, Plumbing Technologies, LLC, post-confirmation, shall be owned as follows, pursuant to 11 U.S.C. §1123(a)(5)(J):

Edward Sims -           1,775 shares of Class A (71% of Class)
                        1,275 shares of Class B (51% of Class)

Curtis Barefield -      50 shares of Class A (2% of Class)
                        50 shares of Class B (2% of Class)

Apex International Limted -   250 shares of Class A (10% of Class)
                             250 shares of Class B (10% of Class)

ElegantHome International Co., Ltd. - 100 shares of Class A (4% of Class)
                                      100 shares of Class B (4% of Class)

Shuixiang Lian -        125 shares of Class A (5% of Class)
                        125 shares of Class B (5% of Class)

Ningbo Bofan Sanitary Ware Co., Ltd -       0 shares of Class A (0% of Class)
                                            475 shares of Class B (19% of Class)

---

[7]On November 22, 2023, this Court entered an Order Expunging Claim No. 21 of Pyramid-Logistics Services, Inc. and that the surrender of the debtor's collateral is in full satisfaction of Pyramid-Logistics Services, Inc.'s secured claim.  (See ECF Doc. No. 80.)

Oyamei Sanitary Co., Ltd. -   100 shares of Class A (4% of Class)
                                      100 shares of Class B (4% of Class)

Wu Qiuping -  100 shares of Class A (4% of Class)
                      100 shares of Class B (4% of Class)

Yibo Jiang -   0 shares of Class A (0% of Class)
                    25 shares of Class B (1% of Class)

**B.  Management** - EDWARD SIMS is the Chief Executive Office of the debtor.  The Board of Managing Members is comprised of Edward Sims and Curtis Barefield.  The Plan contemplates that there will be no change in the officers, directors and/or board of managing members of the debtor.

Anticipated compensation for management of the debtor corporation post-confirmation is as follows: EDWARD SIMS - $2,403.85 per week (gross); CURTIS BAREFIELD – $1,730.77 per week (gross).

## ARTICLE X

## DEFAULT

In the event of a default under the Plan that are cured by the debtor, the affected creditor(s) shall file a notice of default with the Bankruptcy Court on notice to the debtor and counsel for the debtor.  The debtor shall have 7 days to object to the notice of default and request a hearing before the Bankruptcy Court.  If the debtor fails to timely file an objection and a request for a hearing, then the automatic stay of 11 U.S.C. §362(a) shall immediately be vacated as to such creditor.

## ARTICLE XI

## RE-VESTING OF ASSETS IN DEBTOR

The entry of the Confirmation Order shall vest all assets of the debtor's estate and the debtor in the reorganized debtor, free and clear of all Claims of creditors, except as specifically provided in the Plan.

## ARTICLE XII

## MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to confirmation, with leave of the Court, upon such notice as the Court shall direct.  After confirmation, the debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or

reconcile any inconsistencies in the Plan, or in the Order of Confirmation in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Notwithstanding Confirmation or the Effective Date having occurred, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purpose of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

1. To allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2. To grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

3. To resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date to the list of executory contracts and unexpired leases to be rejected;

4. To ensure that Distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan, including ruling on any motion or objection Filed pursuant to the Plan;

5. To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or its affiliates, directors, employees, agents or professionals that may be pending on the Effective Date;

6. To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

7. To resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

8. To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

9. To resolve any cases, controversies, suits or disputes with respect to the

releases, injunction and other provisions contained herein and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

10. To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11. To determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan;

12. To enter an order and/or Final Decree concluding the Chapter 11 Case;

13. To consider any modification of the Plan under section 1127 of the Bankruptcy Code and/or modification of the Plan before "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code;

14. To protect the property of the Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine the Debtor's exclusive ownership of claims and Causes of Action retained under the Plan;

15. To hear and determine matters pertaining to abandonment of property of the Estate;

16. To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

17. To interpret and enforce any orders previously entered in the Chapter 11 Case to the extent such orders are not superseded or inconsistent with the Plan;

18. To recover all Assets of the Debtor and property of the Estate, wherever located;

19. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code;

20. To hear and act on any other matter not inconsistent with the Bankruptcy Code;

21. To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action on behalf of the Estate; and

22. To interpret and enforce the injunctions contained in the Confirmation Order.

## ARTICLE XIV

### DISCHARGE OF CLAIMS AND INDEBTEDNESS

Except as provided for herein, in accordance with §§1192 and 1141(d)(1)(A) of the Bankruptcy Code, upon completion of the payments called for through the fifth anniversary of the Plan, all indebtedness of and claims against the debtor shall be discharged in exchange for the rights acquired under this Plan.

## ARTICLE XV

### GENERAL PROVISIONS

Binding Effect.   Confirmation of the Plan shall bind the reorganized debtor and every creditor of the debtor whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

Cram Down.   In the event that all classes of claims and interests impaired under the Plan do not vote in favor of the Plan, the debtor requests that the Court confirm the Plan under the provisions set forth in 11 U.S.C. §1191(b), as the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class.

Dated:  Wappingers Falls, New York
          January 24, 2024

                               PLUMBING TECHNOLOGIES, LLC

                    By:     /s/ Edward Sims
                            EDWARD SIMS, Chief Executive Officer

                            GENOVA, MALIN & TRIER LLP
                            Attorneys for Debtor
                            1136 Route 9
                            Wappingers Falls, NY  12590
                            (845) 298-1600

                    By:     /s/ Michelle L. Trier
                            MICHELLE L. TRIER, ESQ.

14